IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| UNIVERSAL COIN AND BULLION, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12-2778 |
| | ) | |
| FEDEX CORPORATION, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

Before the Court is Defendant FedEx Corporation's ("FedEx") November 19, 2012 Motion to Dismiss (the "Motion"). (Mot. to Dismiss, ECF No. 5.) Plaintiff Universal Coin and Bullion, LTD. ("UCB") responded on December 21, 2012 (the "Response"). (Resp. to Mot. to Dismiss, ECF No. 9.) FedEx replied on January 14, 2013. (Reply, ECF No. 13.) FedEx seeks an order dismissing UCB's Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, FedEx's Motion is GRANTED IN PART and DENIED IN PART.

## I.   Background[1]

UCB brings suit for gross negligence, negligence, breach of contract, interference with a prospective advantage or business relationship, and breach of the duty of good faith and fair dealing arising from FedEx's disclosure of confidential information to third-party New York coin dealers (the "Coin Dealers"). (Compl. ¶ 1.) UCB markets, sells, and distributes precious metals, including gold coins. (Id. ¶ 7.) UCB contracted with FedEx for the shipment of coins to or from clients and "to pick up checks from customers of UCB who have purchased coins from UCB and chosen to pay for the coins by personal check or money order." (Id. ¶ 9.) UCB's use of FedEx was "uniquely limited to [UCB's] high value clients." (Id. ¶ 10.)

Beginning in 2009, UCB learned that several of its clients had been contacted by the Coin Dealers. (Id. ¶ 20.) On March 17, 2010, UCB representatives met with an Assistant United States Attorney for the Eastern District of New York, who informed UCB that the Coin Dealers had defrauded UCB's clients. (Id. ¶ 22.) The Coin Dealers used confidential information obtained from FedEx account invoices to contact UCB customers and convince them to purchase gold coins worth as little as five

---

[1] The following allegations are taken from UCB's Complaint, unless otherwise stated. (Compl., ECF No. 1.)

percent of their represented value. (Id. ¶¶ 43-44, 46.) Many of the Coin Dealers have been indicted for mail fraud, wire fraud, and money laundering, among other things. (Id. ¶ 49.)

UCB and FedEx were parties to a number of agreements. They include standard shipping contracts, a FedEx Credit Card Remittance Agreement, FedEx Pricing Agreement, FedEx Service Guide, Contract of Carriage, FedEx Smart Post Shipments, FedEx Express Terms & Conditions, and Website Modifications to the Agreements (collectively, the "FedEx Agreements"). (Id. ¶¶ 12-13.) (Mot. to Dismiss, ECF No. 5 at 13.)

The FedEx Agreements "contained numerous references to the importance of confidentiality and privacy of information involving the account." (Id. ¶ 14.) The FedEx Credit Card Remittance Agreement "recognizes that all credit card account information shall be treated as strictly confidential and provides that FedEx shall keep such confidential information in good order and not disclose such information to any person without consent unless the law requires disclosure." (Id. ¶ 15.) The FedEx Pricing Agreement specifically recognizes mutual confidentiality between the client and FedEx. (Id. ¶ 16.) The FedEx Service Guide "recognizes the potential for improper illegal or other misuse of a FedEx account" and "also recognizes the need for safekeeping of the account number, the account information and the protection from any misuse of the account."

3

(Id. ¶ 17.)   The contractual relationship between FedEx and UCB "foresaw the potential for improper, illegal or other misuses of the FedEx account information and the importance of protecting the confidential nature of account information including account invoices." (Id. ¶ 19.)

## II. Jurisdiction and Choice of Law

Under 28 U.S.C. § 1332(a), this Court has original jurisdiction of all civil actions between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs". 28 U.S.C. § 1332(a)(1). UCB is a Texas corporation with its principal place of business in Beaumont, Texas. (Compl. ¶ 7.) FedEx is a Delaware corporation headquartered in Memphis, Tennessee. (Id. ¶ 8.) UCB alleges "millions of dollars" of damages. (Id. ¶ 58.) The parties are completely diverse, and the amount-in-controversy requirement is satisfied.

In a diversity action, state substantive law governs. See Brocklehurst v. PPG Indus., Inc., 123 F.3d 890, 894 (6th Cir. 1997) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). A federal district court applies the choice-of-law rules of the state in which it sits. See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941); Montgomery v. Wyeth, 580 F.3d 455, 459 (6th Cir. 2009) (citation omitted).

Tennessee courts generally "honor a contractual choice-of-law provision, so long as it meets certain requirements." Yang Ming Marine Transp. Corp. v. Intermodal Cartage Co., Inc., 685 F. Supp. 2d 771, 780 (W.D. Tenn. 2010) (citations omitted). A choice-of-law provision must: (1) be executed in good faith; (2) bear a material connection to the parties' business; (3) be reasonable and not merely sham or subterfuge; and (4) not be contrary to a fundamental policy of a state that possesses "a materially greater interest" and whose law would otherwise govern. Id. (citations and internal quotation marks omitted).

The FedEx Express Terms & Conditions provide that, "[t]o the extent that any court finds that state rather than federal law applies to any provision of this contract, the controlling law is the substantive law of the state in which you tendered your shipment to us." (Defendant Ex. 1, ECF No. 5-1 at 10). UBC tendered its shipments in Texas. (Compl. ¶ 7.) The choice-of-law provision was executed in good faith. Tennessee does not have a materially greater interest in the contract claims in this case. Neither party disputes the application of Texas law. The Court will apply Texas substantive law to the contract claims.

Both parties also agree that Texas substantive law applies to the tort claims. (Mot. to Dismiss, ECF No. 5 at 5); (Response, ECF No. 9 at 16.) When "the parties agree to the

5

particular state law application, the court will apply [that state's] law and will not conduct a choice of law analysis sua sponte." AutoZone, Inc. v. Glidden Co., 737 F. Supp. 2d 936, 941 (W.D. Tenn. 2010) (citing Americoach Tours, Inc. v. Detroit Diesel Corp., No. 04-2016 B/V, 2005 WL 2335369, at *1 (W.D. Tenn Sept. 23, 2005)). See also In re Korean Air Lines Disaster of Sept. 1, 1983, 932 F.2d 1475, 1495 (D.C. Cir. 1991) ("Unlike jurisdictional issues, courts need not address choice of law questions sua sponte."). The Court will apply Texas substantive law to the tort claims.

### III. Standard of Review

In addressing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007). This standard requires more than bare assertions of legal conclusions. Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Any claim for relief must contain "a short and plain

6

statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (quoting Twombly, 550 U.S. at 555).

Nonetheless, a complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its face'" to survive a motion to dismiss. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949 (citation omitted). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." Id. at 1950.

UCB did not attach the FedEx Agreements to its Complaint because it sought to avoid having a motion to dismiss converted into a motion for summary judgment. (See Response 6) ("Because FedEx filed a Rule 12(b)(6) Motion to Dismiss, and not a Motion for Summary Judgment, UCB need not and should not attach documents and evidence to this Opposition, lest the Motion to

Dismiss be converted into a Motion for Summary Judgment.") FedEx attached the FedEx Agreements as exhibits to the Motion.

"[W]hen a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." Commercial Money Ctr., Inc. v. Illinois Union Ins. Co., 508 F.3d 327, 335-36 (6th Cir. 2007). The Court "retains the discretion to consider or exclude [] extrinsic evidence presented with a Rule 12(b) motion." Notredan, LLC v. Old Republic Exch. Facilitator Co., No. 11-2987-STA-tmp, 2012 U.S. Dist. LEXIS 48976, at *13 (W.D. Tenn. Apr. 6, 2012), aff'd by, Notredan, LLC v. Old Republic Exch. Facilitator Co., No. 12-5852, 2013 U.S. App. LEXIS 15879 (6th Cir. July 29, 2013).

The FedEx Agreements attached to the Motion are integral to UCB's claims. They include confidentiality provisions that bear directly on the extent to which FedEx may be liable. Because the FedEx Agreements are integral to UCB's claims, the Court will consider them without converting FedEx's Motion into a motion for summary judgment.

**IV. Analysis**

FedEx argues that: (1) the Airline Deregulation Act ("ADA"), 49 U.S.C. §§ 41713, et seq., preempts UCB's non-contractual state-law claims; (2) UCB's breach-of-contract claim must be dismissed; (3) even if UCB's claims for tortious

8

interference and breach of a duty of good faith were not preempted, they should be dismissed as insufficiently pled; and (4) each of UCB's claims is barred by the one-year contractual limitations period.

### A. ADA Preemption of Non-Contractual State-Law Claims

The ADA provides, in relevant part, that "a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart."  49 U.S.C. § 41713(b)(1).  In passing the ADA, Congress "largely deregulated air transport" to ensure that the "States would not undo federal deregulation with regulation of their own."  American Airlines, Inc. v. Wolens, 513 U.S. 219, 222 (1995) (internal quotation marks omitted).  The Supreme Court has broadly construed the statute's preemption clause, concluding that the "relating to" language means "having a connection with, or reference to, airline 'rates, routes, or services.'"  Id. at 223 (quoting Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378 (1992)).

The Supreme Court's decisions interpreting the ADA's preemption clause in Morales and Wolens provide limited guidance here because the ADA clearly preempted the claims at issue in both cases.  In Morales, the Supreme Court held that the ADA

9

preempted fare advertising requirements imposed by the National Association of Attorneys General, which "obviously relate[d] to rates within the meaning of" the ADA. Morales, 504 U.S. at 375 (internal quotation marks omitted). In Wolens, application of a state consumer fraud statute to retroactive changes in capacity controls and blackout dates "typified" the kind of "intrusive regulation of airline business practices" that the ADA's preemption clause sought to avoid. Wolens, 513 U.S. at 227. Neither case can be straightforwardly applied to tort claims against airlines for allegedly mishandling private customer information.

Despite the limited applicability of the facts in Morales and Wolens, the Supreme Court has stated several principles helpful in applying the ADA's preemption clause. First, even when Congress enacts an express preemption clause, its interpretation must begin with the "presumption that Congress does not intend to supplant state law." New York State Conf. of Blue Cross & Blue Shield v. Travelers Ins. Co., 514 U.S. 645, 654 (1995). Second, there is clearly a limit to the breadth of the ADA's preemption clause because some sate law claims may affect airline fares or services "in too tenuous, remote, or peripheral a manner to have pre-emptive effect." Morales, 504 U.S. at 390 (internal quotation marks omitted). Finally, in drawing the line between preempted claims and tenuously related

10

claims, courts should consider the purpose behind the preemption clause, which was to "promote maximum reliance on competitive market forces" and prevent state interference with federal deregulation of airlines. <u>Wolens</u>, 513 U.S. at 230 (citing 49 U.S.C. App. § 1302(a)(4)); <u>Charas v. Trans World Airlines, Inc.</u>, 160 F.3d 1259, 1265 (9th Cir. 1998).

The Sixth Circuit has not decided when to apply the ADA's preemption clause to state tort claims, <u>Hammond v. Nw. Airlines</u>, No. 09-122331, 2009 WL 4166361, at *3 (E.D. Mich. Nov. 25, 2009), and there is no consensus among the other circuits.

The Ninth Circuit focuses on the economic deregulation of the airline industry, construing "services" narrowly on the basis that, "when Congress enacted *federal* economic deregulation of the airlines, it intended to insulate the industry from possible *state* economic regulation as well . . . . It did not intend to immunize the airlines from liability for personal injuries caused by tortious conduct." <u>Charas</u>, 160 F.3d at 1266 (emphasis in original).

The Seventh Circuit has similarly considered the economic impact of state claims, concluding that the ADA did not preempt claims by a travel agency alleging that an airline uttered slanderous statements because the claims did not directly relate to or have the "forbidden significant [economic] effect" on airline rates, routes, or services. <u>Travel All Over The World,</u>

11

Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1431 (7th Cir. 1996) (citation omitted). See also S.C. Johnson & Son, Inc. v. Transport Corp. of America, Inc., 697 F.3d 544, 553 (7th Cir. 2012).

The Third Circuit has also construed the ADA's preemption clause to exclude from preemption state tort laws that do not have a "regulatory effect." Taj Mahal Travel, Inc. v. Delta Airlines, Inc., 164 F.3d 186, 194 (3rd Cir. 1998). In Taj Mahal Travel, the court held that the ADA did not preempt state defamation claims because such claims do not "frustrate[] deregulation by interfering with competition" and do not amount to "public utility-style regulation." Id.

The Fifth Circuit has applied the ADA's preemption clause by defining "services" to include only activities "appurtenant and necessarily included with the contract of carriage between the passenger or shipper and the airline." Hodges v. Delta Airlines, Inc., 44 F.3d 334, 336 (5th Cir. 1995) (en banc). Under this view, "federal preemption of state laws, even certain common law actions 'related to services' of an air carrier, does not displace state tort action for personal physical injuries or property damage caused by the operation and maintenance of aircraft." Hodges, 44 F.3d at 336. In Hodges, the Fifth Circuit held that the ADA did not preempt a state tort claim against Delta Airlines for negligently allowing storage of a box

12

in an overhead compartment because that storage was not an element "of the air carrier service bargain . . . such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself." Id. at 336 (quoting Hodges v. Delta Airlines, Inc., 4 F.3d 350, 354 (5th Cir. 1993)).  The Hodges court supported its narrow definition of "services" by citing other provisions of the airline regulatory code that require air carriers to carry insurance "for the loss of or damage to property of others, resulting from the operation or maintenance of aircraft."  Id. at 338.

The Southern District of New York has concluded that three primary factors emerge from the case law construing the preemption clause.  Rombom v. United Air Lines, Inc., 867 F.Supp. 214, 221 (S.D.N.Y. 1994).  The threshold question is (1) whether an activity at issue is an airline "service."  If the activity is not a service, state laws are not preempted. If the activity is a service, the question is (2) whether the plaintiff's claims affect the service directly or merely tenuously.  If the claim does affect the service directly, the court asks (3) whether "the underlying tortious conduct was reasonably necessary to the provision of the service."  Id.

FedEx argues that UCB's gross negligence, negligence, tortious interference and breach of duty of good faith and fair

dealing claims (Counts I, II, IV, and V) are preempted because they relate to FedEx's prices and services.  FedEx argues that those claims relate to FedEx's invoicing procedures for shipping services and the handling of customer shipping data and account information.

To support its preemption argument, FedEx cites In re American Airlines, in which the District Court for the Northern District of Texas held that the disclosure of passenger information to the Transportation Security Administration ("TSA") was a "service" under the ADA because it has "a connection at least with American's ticketing service, including the reservation component."  370 F. Supp. 2d 552, 564 (N.D. Tex. 2005).  FedEx also cites Copeland v. Northwest Airlines Corp., an unreported case in which this Court held that the ADA preempted claims against Northwest Airlines for sharing passenger data with the National Aeronautics and Space Administration ("NASA") to aid NASA in researching airline security.  2005 WL 2365255, *1 (W.D. Tenn. 2005).

UCB argues that the claims in Counts I, II, IV, and V are not preempted because they affect airline activities in a tenuous, remote, or peripheral manner.  (Response at 7) (citing Morales, 504 U.S. at 390).  Citing In re JetBlue Airways, UCB argues that, because its state claims do not "'directly relate[] to airline rates or routes,'" they are not preempted by the ADA.

14

379 F. Supp. 2d 299, 318 (E.D.N.Y. 2005). In In re JetBlue Airways, the court concluded that common law causes of action for trespass to property, unjust enrichment, and breach of contract, which arose from an airline's unauthorized transfer of passenger information to a data mining company, were not preempted. 379 F. Supp. 2d at 300. The court reasoned that defendants had "failed to establish how the plaintiffs'" common-law claims "that pertain[] to the dissemination of plaintiffs' information directly relate[] to airline rates or routes." Id. at 318.

The Court does not need to adopt a particular definition of "services" or apply the Rombom three-factor approach to determine that the ADA does not preempt UCB's state common law tort claims for the alleged mishandling of private customer information. Congress enacted the ADA's preemption clause to prevent states from burdening air carriers with invasive regulations that would frustrate the federal regulatory scheme. The ADA preempts state common law tort claims only when those claims are sufficiently related to the air carrier's rates, routes or services to "undo federal deregulation with regulation of their own." See Wolens, 513 U.S. at 222. Here, FedEx's alleged mishandling of UCB's customer information, which allowed the defrauding of UCB's customers and a significant reduction in sales, falls within the category of claims that are "too

15

tenuous, remote, or peripheral" to aviation regulation to be preempted by the ADA.  See Morales, 504 U.S. at 390.

Neither In re American Airlines nor Copeland, both cited by FedEx, is to the contrary.  In both, private customer information was intentionally disclosed to government agencies in the ordinary course of business to assist those agencies in performing their statutory duties.  The disclosure supported research directly related to the provision of airline services, such as reservations and security.  See 370 F. Supp. 2d at 564; 2005 WL 2365255, *1.  Here, UCB alleges that FedEx negligently disclosed confidential information to private parties that permitted the perpetration of fraud.  The cases are not comparable.

FedEx cites no provision in the ADA or in Supreme Court precedent to overcome the presumption against preempting state tort claims.  See Travelers Ins. Co., 514 U.S. at 654.  FedEx offers no reason other than preemption to dismiss UCB's negligence and gross negligence claims.  FedEx's Motion to dismiss UCB's negligence and gross negligence claims is DENIED.

### B. Breach of Contract

FedEx argues that UCB's claim for breach of contract should be dismissed because UCB fails to identify a contractual provision that FedEx has breached, UCB has not demonstrated any damages that could be recovered from the breach of an agreement

16

with FedEx, FedEx expressly limited liability in its contract with UCB, and UCB's breach-of-contract claim is preempted by the ADA.

In the context of a motion to dismiss, a breach-of-contract claim must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery. Twombly, 550 U.S. at 562 (2007). Under Texas law, the essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained as a result of the breach. Sauceda v. GMAC Mortg. Corp., 268 S.W.3d 135, 139 (Tex. App. 2008).

UCB adequately pleads a claim for breach of contract. UCB directly alleges the existence of valid contracts with FedEx. (Compl., ECF No. 1 at ¶ 12.) ("In furtherance of its business, UCB entered into standard [FedEx] shipping contracts.") UCB also alleges the existence of an implied promise by FedEx to safeguard UCB's client information. UCB alleges that the FedEx Pricing Agreement specifically recognizes mutual confidentiality between UCB and FedEx (Id. ¶ 16.) and "[t]he FedEx agreements contained numerous references to the importance of confidentiality and privacy of information involving the account." (Id. at ¶¶ 14, 58.) UCB adequately alleges that it

17

has tendered performance.  (Id. at ¶ 9) ("UCB utilized FedEx for the shipment of coins to or from clients and to pick up checks from customers of UCB who have purchased coins from UCB.")  UCB also adequately alleges that FedEx breached the contract.  (Id. at ¶¶ 14, 58) ("UCB has identified a minimum of 621 unique coin clients whose confidential information was disclosed . . . as a result of FedEx's failure to protect the confidential nature of these transactions.")  UCB directly alleges damages sustained as a result of the breach.  (Id. at ¶ 58)  ("An analysis of those 621 clients shows a staggering reduction in the number of sales transactions with UCB after their disclosure by FedEx with a resulting loss of millions of dollars of sales to UCB.")  UCB adequately alleges each element of a breach-of-contract claim.

FedEx asserts that a limited liability clause in its contract with UCB precludes recovery for breach of contract. Specifically, FedEx argues that "the section of the Service Guide labeled 'Declared Value and Limits of Liability (not insurance coverage)' established FedEx's maximum liability under the contract: 'The declared value of any package represents our maximum liability in connection with a shipment of that package, including, but not limited to, any loss, damage, . . .  or misdelivery of information relating to shipment.'" (Mot. to Dismiss, ECF No. 5 at 13.)  FedEx argues that its liability limitation is enforceable under Texas law, citing Bergholtz v.

18

<u>Southwestern Bell Yellow Pages, Inc.</u>, 324 S.W.3d 195, 199 (Tex. Ct. App. 2010).

Regardless of the enforceability of the clause, its terms limit its applicability to damages sought in "connection with a shipment of a package." (Mot. to Dismiss, ECF No. 5 at 13.) UCB's claim for breach of contract goes beyond the shipping contract. UCB alleges that FedEx breached an implied promise to safeguard UCB's client information. (Comp., ECF No. 1 at ¶¶ 14, 58.) Thus, even if enforceable, the limited liability clause would not warrant dismissal of UCB's claim for breach of contract at this stage.

FedEx also argues that the ADA preempts UCB's claim for breach of contract. The ADA does not "shelter airlines from suits . . . seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." <u>Wolens</u>, 513 U.S. at 228. Rather, "terms and conditions airlines offer and passengers accept are privately ordered obligations and thus do not amount to a State's enact[ment] [of] any law, rule, regulation, standard, or other provision having the force and effect of law" within the meaning of the ADA. <u>Id.</u> at 228-29 (alterations in original) (citation and internal quotation marks omitted). The ADA does not preempt "state-law-based court adjudication of routine breach-of-contract claims. . . ." <u>Id.</u> at 232.

UCB has adequately pled a claim for breach of contract, the limited-liability clause does not prohibit the contract claim from moving forward, and the ADA does not preempt the claim. FedEx's Motion to dismiss UCB's claim for breach of contract is DENIED.

### C. State-Law Claims for Tortious Interference and Breach of Duty of Good Faith and Fair Dealing

FedEx argues that UCB fails to adequately allege claims for tortious interference with a prospective advantage or business relationship and breach of the duty of good faith and fair dealing.

To establish a claim for tortious inference with a prospective advantage or business relationship under Texas law, a plaintiff must prove (1) a reasonable probability that the plaintiff would have entered into a business relationship; (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring; (3) that the defendant did that act with a conscious desire to prevent the relationship from occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct; and (4) that the plaintiff suffered actual harm or damages as a result of the defendant's

interference.   See Baty v. Protech Ins. Agency, 63 S.W.3d 841, 860 (Tex. Ct. App. 2001).

FedEx correctly argues that UCB has failed to allege any behavior by FedEx that, if proven, would establish that FedEx acted with a conscious desire to prevent a business relationship from occurring, or knew that interference was substantially certain as a result of its conduct. (Mot. to Dismiss, ECF No. 5 at 16.) Indeed, UCB's allegations imply the opposite – that FedEx's disclosures were unintentional, perhaps amounting to negligence or gross negligence, but not more. (Compl., ECF No. 1 at ¶ 31.) ("[A] request to e-mail or fax a billing invoice should have alerted FedEx that this was an improper request for information and been denied." (emphasis added)). The basis of a tortious interference claim is intent or knowledge. No facts to support such a claim have been alleged here. FedEx's Motion to dismiss UCB's claim for tortious interference is GRANTED.

UCB also fails to adequately allege that it had a "special relationship" with FedEx, a necessary element of a claim for breach of good faith and fair dealing. The Texas Supreme Court has "specifically rejected the implication of a general duty of good faith and fair dealing in all contracts." City of Midland v. O'Bryant, 18 S.W.3d 209, 215 (Tex. 2000). The court "has imposed an actionable duty of good faith and fair dealing only when there is a special relationship, as that between an insured

21

and his or her insurance carrier." Id. (internal citation and quotation marks omitted). "A special relationship has been found to exist in the insurance context because of the parties' unequal bargaining power and the nature of insurance contracts which would allow unscrupulous insurers to take advantage of their insureds' misfortunes in bargaining for settlement or resolution of claims." Saucedo v. Horner, 329 S.W.3d 825, 831 (Tex. App. 2010) (internal quotation marks omitted). Unequal bargaining power alone is insufficient to create a special relationship absent the strong possibility or presence of unfairness. For example, Texas courts have refused to infer a special relationship between an employer and an employee, O'Bryant, 18 S.W.3d at 215, or a creditor and a debtor. See UMLIC VP LLC v. T & M Sales and Envtl. Sys., Inc., 176 S.W.3d 595, 612 (Tex. App. 2005).

UCB argues that it has adequately alleged the existence of a special relationship with FedEx because it provided FedEx "its most valuable asset – its list of 'whale' clients in the gold industry." (Resp. to Mot. to Dismiss, ECF No. 9 at 19.)   UCB also argues that, because FedEx is a much larger corporation and drafted all of the contracts between the parties, FedEx had superior bargaining power sufficient to establish a special relationship. (Id.)

FedEx and UCB did not have a special relationship under Texas law. Both are sophisticated corporations that engaged in arms-length transactions with each other for their mutual benefit. That FedEx drafted the contracts at issue does not, by itself, suggest disproportionate bargaining power. UCB does not allege that its shipping options were limited to FedEx or that any aspect of the contracts was unfair. Entrusting FedEx with sensitive information is insufficient to create a special relationship. Thus, UCB has failed to plead a claim for breach of good faith and fair dealing, and FedEx's Motion to dismiss that claim is GRANTED.

### D. Statute of Limitations

FedEx alleges that UCB failed to file its complaint within the one-year contractual limitations period. Even if enforceable, however, the terms of the contract confine the contractual limitations period to causes of action "arising from the transportation of any package." (Defendant Ex. 1, ECF No. 5-1 at 10.) UCB's claims do not arise from the shipment of packages, but the alleged mishandling of private customer information. Thus, FedEx's Motion to dismiss the complaint as untimely filed is DENIED.

### V. Conclusion

For the foregoing reasons, FedEx's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

23

So ordered this <u>12th</u> day of September, 2013.

<div style="margin-left: 50%">

s/ Samuel H. Mays, Jr.   
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

</div>